IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**THOMAS CHARLES CRANGLE,**  Case Number 5:13 CV 842

    Petitioner,  Judge Jack Zouhary

    v.  REPORT AND RECOMMENDATION

**TERRY TIBBALS, Warden**

    Respondent.  Magistrate Judge James R. Knepp II

### INTRODUCTION

*Pro se* Petitioner Thomas Charles Crangle, a prisoner in state custody, filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Petition). (Doc. 1). Respondent filed a Motion to Dismiss the Petition as time-barred. (Doc. 8). Petitioner filed a Motion for Expansion of the Record and/or Evidentiary Hearing (Doc. 14) and a Reply (Doc. 15)[1], which Respondent opposed (Doc. 16). For the reasons discussed below, the undersigned recommends Petitioner's Motion for Expansion of the Record and/or Evidentiary Hearing be GRANTED in part, Respondent's Motion to Dismiss GRANTED, and the Petition DISMISSED as time-barred.

### PROCEDURAL BACKGROUND

**State Trial Court**

In November 2006, Petitioner was indicted by a grand jury for rape of a minor less than thirteen years of age, kidnapping, and gross sexual imposition. (Doc. 8-1, Ex. 3). The indictment was later supplemented to include specification of sexually violent predator. (Doc. 8-1, Ex. 4). On February 21, 2007, following plea negotiations, Petitioner withdrew his plea of not guilty and pleaded guilty in exchange for reduced charges – one count of rape with a recommended

---

1. Petitioner used "traverse" to identify what is currently referred to as a "reply". *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

sentence of life with parole eligibility after ten years. (Doc. 8-1, Ex. 6). Pursuant to the plea agreement, Petitioner acknowledged he was subject to post-release control after release from prison, "which could last up to 5 years." (Doc. 8-1, Ex. 6). That same day, the trial court held a sentencing hearing. While the Court lacks a transcript of that proceeding, Petitioner's post-release modification hearing transcript reflects that when the trial judge began to inform Petitioner of his post-release control terms, he was interrupted by Petitioner's original trial counsel, who incorrectly informed the judge that Petitioner was subject to parole, not post-release control. (See Doc. 15-1, at 2-3; Doc. 8-1, Ex. 30, at 2). On February 26, 2007, the trial court sentenced Petitioner to the negotiated sentence of life with the possibility of parole after ten years, and declared him to be a sexual predator. (Doc. 8-1, Ex. 7). The sentencing entry did not include the post-release control terms discussed in his plea agreement. (Doc. 8-1, Ex. 7). Petitioner did not perfect a timely direct appeal to the court of appeals.

**Delayed Direct Appeal**

On April 19, 2007, Petitioner filed a *pro se* motion for delayed appeal and notice of appeal to the Ninth District Court of Appeals, Summit County. (Doc. 8-1, Ex. 8-9). On July 16, 2007, the appellate court noted the trial court failed to memorialize a "finding of guilt" pursuant to Ohio Crim. R. 32(C), and ordered Petitioner to obtain and file a final appealable order by August 23, 2007. (Doc. 8-1, Ex. 10). When Petitioner failed to comply, the appellate court dismissed his appeal for lack of a final appealable order on August 27, 2007. (Doc. 8-1, Ex. 11). Petitioner filed a motion for reconsideration, which the appellate court denied. (Doc. 8-1, Ex. 12-13).

Petitioner returned to the trial court and filed a motion to correct the record pursuant to Ohio Crim. R. 32(C). (Doc. 8-1, Ex. 14). On November 26, 2007, the trial court entered a new

judgment to include a "finding of guilt", thus correcting its previous entry. (Doc. 8-1, Ex. 15). Again, Petitioner failed to perfect a timely direct appeal of this new judgment.

Instead, on January 2, 2008, Petitioner filed an untimely *pro se* notice of appeal followed by a February 7, 2008 motion for leave to file delayed appeal. (Doc. 8-1, Ex. 16-17). After the appellate court granted leave to appeal, Petitioner, through counsel, raised the following assignment of error:

> 1. Defendant-Appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Appellant was deprived effective assistance of counsel by virtue of the fact that his trial counsel had him plead guilty rather than no contest, thereby effectively precluding his ability to challenge the trial court's pretrial evidentiary rulings on the competency of child witnesses and the admission of other acts testimony.

(Doc. 8-1, Ex. 18). On November 5, 2008, the appellate court overruled Petitioner's assignment of error and affirmed the decision of the trial court. (Doc. 8-1, Ex. 20).

Petitioner failed to perfect a timely appeal to the Ohio Supreme Court. Accordingly, his conviction became final forty-five days later, on December 20, 2008.

Over four years later, on March 28, 2013, Petitioner filed a *pro se* notice of appeal and motion to file a delayed appeal with the Ohio Supreme Court. (Doc. 8-1, Ex. 21-22). On May 22, 2013, the Ohio Supreme Court denied Petitioner's motion and dismissed his appeal. (Doc. 8-1, Ex. 23).

**Motion to Withdraw Guilty Plea**

On August 5, 2010, Petitioner filed a *pro se* motion to withdraw his guilty plea arguing his plea was not "knowingly, intelligently, and voluntarily made" because "during the change of plea colloquy, the attorneys and court debated post-release control versus parole." (Doc. 8-1, Ex. 24). Petitioner simultaneously filed a motion to impose a lawful sentence, arguing the trial court

3

failed to impose a mandatory term of post-release control in his sentencing order. (Doc. 8-1, Ex. 25). The state opposed Petitioner's motion to withdraw his plea and agreed that Petitioner's sentencing entry should be corrected *nunc pro tunc* pursuant to *State v. Singleton*, 124 Ohio St.3d 173 (Ohio 2009). (Doc. 8-1, Ex. 25).

On November 19, 2010, the trial court denied Petitioner's motion to withdraw his guilty plea and corrected its sentencing order *nunc pro tunc* to reflect the mandatory five-year term of post-release control.  (Doc. 8-1, Ex. 28).

Petitioner, though counsel, timely appealed the trial court's judgment entry to the Ninth District Court of Appeals and asserted the following assignment of error:

> 1. The trial court erred by denying [Petitioner's] motion to withdraw his guilty pleas. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, R.C. 2907.02, R.C. 2967.28, Crim.R. 11, T.p. 7-9 (Feb. 21, 2007 Plea Hearing); T.p. 10-11 (Hearing, Nov. 16, 2010); Entry adding postrelease [sic] control and denying motion to withdraw plea, Nov. 19, 2010.

(Doc. 8-1, Ex. 30). On November 9, 2011, the appellate court affirmed the trial court's dismissal of Petitioner's untimely motion to withdraw his guilty plea. (Doc. 8-1, Ex. 34).

Petitioner filed a motion for reconsideration or in the alternative to certify a conflict, which was denied by the appellate court on December 19, 2011. (Doc. 8-1, Ex. 36). On February 2, 2012, Petitioner, through counsel, filed a timely notice of appeal with the Ohio Supreme Court, raising the following assignment of error:

> 1. Under Special Prosecutors, as explained in State v. Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, an appellate affirmance does not automatically deprive a trial court of jurisdiction to vacate a guilty plea properly filed under Crim. R. 32.1.

(Doc. 8-1, Ex. 37). On April 4, 2012, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. 8-1, Ex. 40).

**Delayed App. 26(B) Application for Reopening**

On July 3, 2012, Petitioner filed a *pro se* delayed application for reopening of his direct appeal pursuant to App. R. 26(B) raising the claim of ineffective assistance of counsel for failing to raise the proposed grounds in his direct appeal:

1. The trial court erred to the prejudice of appellant by accepting his guilty plea, as appellant's plea was not knowingly, intelligently, and voluntarily entered and was therefore obtained in violation of appellant's due process rights under the [F]ourteenth Amendment to the United States Constitution and Article One, Section Sixteen of the Constitution of the State of Ohio.

2. The appellant was deprived the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Section Sixteen of the Ohio Constitution.

(Doc. 8-1, Ex. 40). On August 28, 2012, the appellate court denied Petitioner's 26(B) application to reopen as untimely. (Doc. 8-1, Ex. 42).

Acting *pro se*, Petitioner appealed this decision to the Ohio Supreme Court on October 12, 2012, and raised the following propositions of law:

I. The appellant was denied the effective assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution.

II. The Appellant was deprived of the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution.

III. The trial court erred to the prejudice of the appellant by accepting his guilty pleas as appellant[']s plea was not knowingly, voluntarily, or intelligently entered and was therefore obtained in violation of appellant[']s Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I Section 16 of the Ohio Constitution.

(Doc. 8-1, Ex. 43). On January 23, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Doc. 8-1, Ex. 46).

**FEDERAL HABEAS CORPUS**

On April 15, 2013, Petitioner filed the instant Petition raising the following grounds for relief:

> **GROUND ONE**: Ineffective Assistance of Trial Counsel
> **Supporting Facts**: Trial counsel failed to provide effective assistance as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution by advising petitioner to enter a plea of guilty instead of no-contest, effectively waiving petitioners [sic] right to challenge any adverse pre-trial evidentiary rulings.
>
> **GROUND TWO**: Ineffective Assistance of Trial Counsel
> **Supporting Facts**: Trial counsel failed to provide effective assistance as guaranteed by the Sixth and Fourteenth Amendment when trial counsel's misinformation to the petitioner, and misrepresentations to the trial court at the plea and sentencing hearing, precluded petitioner from entering his guilty plea knowingly and intelligently with sufficient awareness of the consequences.
>
> **GROUND THREE**: The trial court accepted petitioner[']s guilty plea in violation of petitioner[']s due process rights under the Fifth and Fourteenth Amendments.
> **Supporting Facts**: The trial court erred when it conveyed inaccurate postrelease control information depriving petitioner the ability to enter his guilty pleas with sufficient awareness of the relevant circumstances and automatic consequences.
>
> **GROUND FOUR**: Ineffective Assistance of Appellate Counsel
> **Supporting Facts**: Petitioner received constitutionally deficient representation when appellate counsel failed to assign as error significant and reversible plea defects regarding post-release control at the petitioners [sic] change of plea and sentencing hearing.

(Doc. 1).

**DISCUSSION**

The main issue is whether Petitioner's November 19, 2010 re-sentencing modification – which corrected Petitioner's original 2007 sentencing entry to reflect five-years of mandatory post-release control – can serve to toll the applicable one-year limitations period under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Alternatively, Petitioner argues he was subject to a later AEDPA start date under 28 U.S.C. §2244(d)(1)(D), when he discovered the

factual predicate of his claim based on *State ex. rel. Carnail v. McCormick*, 931 N.E.2d 110 (Ohio 2010); or §2244(d)(1)(B) because the state prohibited him from properly filing a legal cause of action before the limitations period expired. (Doc. 15, at 2-6). As a last resort, if the Court finds his Petition time-barred, Petitioner argues he is entitled to equitable tolling based on ineffective assistance of counsel. (Doc. 15, at 6-7).

*Statute of Limitations*

Under AEDPA, there is generally a one-year period in which a prisoner in state custody may file a petition for habeas relief in federal court:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Here, Petitioner's conviction became final upon the expiration of time for seeking direct review of his conviction and sentence under 28 U.S.C. § 2254(d)(1)(a). On November 5, 2008, the appellate court overruled Petitioner's assignment of error and affirmed the decision of the trial court. (*See* Doc. 8-1, Ex. 20). In order to perfect a timely appeal from the court of appeals, Petitioner was required to file a notice of appeal in the Ohio Supreme Court "within 45 days

7

from the entry of judgment entry being appealed." Rule II, §2(A) of the Rules of Practice of the Supreme Court of Ohio (2012). Hence, Petitioner's conviction became final on December 20, 2008, forty-five days after the November 5, 2008 appellate court decision. Absent tolling, Petitioner's AEDPA time limitation expired one year later, on December 20, 2009.

While the running of the limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims under 28 U.S.C. § 2254 (d)(2), *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000), this statutory tolling provision does not revive the limitations period, it can only serve to pause a clock that has not yet expired. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Vroman v. Brigano*, 346 F.3d 598 (6th 2003); *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003).

Here, Petitioner failed to file any qualifying collateral action that tolled the relevant AEDPA one-year period between December 20, 2008, and December 20, 2009. 28 U.S.C. § 2254(d)(2). Petitioner's post-judgment proceedings were filed several years after his conviction became final. (Doc. 8-1, Ex. 21, 22). Therefore, they cannot serve to toll the AEDPA limitations period that had already expired.  *Searcy*, 246 F.3d 515; *Vroman*, 346 F.3d 598.

It is true that if a state trial court enters an entirely new judgment, thereby replacing the prior judgment, the statute of limitations begins to run anew. *Quails v. Warden*, 2013 WL 1363784, at *4 (S.D. Ohio) *affirmed and adopted* 2013 WL 3122285 (S.D. Ohio) (quotations omitted) (citing *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012)). Thus, the Petition could be considered timely if the 2010 *nunc pro tunc* sentencing entry constituted a re-sentencing and resulted in a new judgment. However, the undersigned finds that is not what occurred here.

8

"Procedural issues surrounding the imposition of post-release control, and the effect of errors in the process on the validity of a criminal sentence, have plagued [] Ohio courts in the recent years." *Quails*, 2013 WL  1363784, at *4; *see, e.g.*, *State v. Singleton*, 920 N.E.2d 958 (Ohio 2009); *State v. Fischer*, 942 N.E.2d 332 (Ohio 2010); *State v. Clark*, 893 N.E.2d 462 (2008 Ohio); *State ex. rel. Carnail v. McCormick*, 931 N.E.2d 110, at ¶21 (Ohio 2010) (explaining that persons convicted of rape, despite tail-end life sentences, are also subject to post-release control). However, in federal court it is clear that state court *nunc pro tunc* entries correcting technical or clerical errors to impose post-release control do not re-start the habeas limitations clock. *Quails*, *supra*; *Quillen v. Warden*, 2013 WL 275973 (S.D. Ohio) *affirmed and adopted* 2013 WL 1315089 (S.D. Ohio); *Davis v. Coleman*, 2012 WL 5385209, at *2 (N.D. Ohio), *affirming and adopting* 2012 WL 967300, at *4-7 (N.D. Ohio).

In *Quillen v. Warden*, the court refused to restart the habeas clock when a sentence was modified to include post-release control terms. *Id*. In doing so, the *Quillen* court looked at "the totality of circumstances surrounding the entry of the corrected judgment to [decide] whether, in fairness, it ought to be considered as having replaced or superceded the prior judgment in any meaningful way." *See Quails*, *supra*, at *5 (citing *Quillen*, 2013 WL 275973, at *10). The court cited a plethora of decisions holding "that a trial court's *nunc pro tunc* judgment entry to correct a technical or clerical error in the original sentence does not constitute a new judgment of sentence that restarts" the habeas clock. *Quillen*, *supra*, at * 10; *See*, *e.g.*, *Davis*, *supra*; *Speller v. Johnson*, 2012 WL 1038624 (E.D. Va.), at *9 n. 21 ("courts have uniformly held that when a court corrects a clerical error in a criminal judgment, the AEDPA's one year limitations period does not begin anew when the court corrects the clerical error").

Here, further reflection is needed, as it appears the trial court did more than correct a technical or clerical error regarding post-release control. This is borne out by the fact that Petitioner's trial counsel interrupted the trial judge at Petitioner's 2007 sentencing when she was informing Petitioner about post-release control, and incorrectly informed her Petitioner was subject to merely parole, without post-release control. (Doc. 15-1, at 2-3; Doc. 8-1, Ex. 30).

Thus, there are a few pieces in play for the Court to consider: 1) Petitioner's binding plea agreement, signed by Petitioner and his trial counsel, which reflects Petitioner would be subject to "up to five-years" post-release control; 2) colloquy between the trial judge, Petitioner, and Petitioner's counsel at Petitioner's 2007 sentencing hearing which reflects that the judge began to inform Petitioner of post-release control, but was interrupted by trial counsel who incorrectly informed the trial judge Petitioner was only subject to parole, not post-release control; 3) the 2007 sentencing entry void of post-release control terms; and 4) 2010 *nunc pro tunc* sentence modification imposing a mandatory five-year term of post-release control.

Recently, a district court in this Circuit determined the statute of limitations was not retriggered when the Ohio court of appeals *sua sponte* vacated the portion of the trial court's original sentencing entry improperly imposing a five-year mandatory term of post-release control on a defendant who was convicted and sentenced for aggravated murder and, therefore, ineligible for post-release control. *Eberle v. Warden*, 2012 WL 4483066, at *8-14 (S.D. Ohio), *adopted and affirmed* 2012 WL 4483427 (S.D. Ohio). There, the modification did not "substantially alter the original judgment entry" and it was "clear from the record that post-release control was not part of the parties' plea bargain or a factor in the petitioner's decision to enter a guilty plea." *Id*. at *14.

Declining to adopt a bright-line rule distinguishing "where the precise line lies between sentence modifications that are insufficient to restart the limitations period on the one hand, and new sentences that are sufficient to do so on the other", the Sixth Circuit affirmed the district court rulings in *Eberle*, persuaded by two observations. *Eberle v. Warden*, 532 F. App'x 605, 610 (6th Cir. 2013). First, the petitioner's sentence was modified to correct a technical error. *Id*. Second, "the change did not pertain to his underlying conviction, nor did it relate to the basis of the plea bargain [the petitioner] struck with the state." *Id*.

To further elaborate on the Sixth Circuit's position in the context of Ohio's post-release control troubles, a discussion of its decision in *Mackey v. Warden*, 525 F. App'x 357, 362-63 (6th Cir. 2013) is warranted. A few months prior to *Eberle*, the Sixth Circuit rejected a petitioner's argument that a *de novo* resentencing hearing to impose post-release control triggered a new AEDPA statute of limitations. *Mackey v. Warden*, 525 F. App'x 357, 362-63 (6th Cir. 2013). There, the Sixth Circuit noted that whether an Ohio court was able to impose post-release controls at a resentencing was an issue of Ohio law; and federal courts must use state law as the rules of decision where issues of state law must be discerned. *Id*. Indeed, the Sixth Circuit found that Ohio law dictated the AEDPA time limit ran from the petitioner's original sentencing because, according to *State v. Fisher,* 942 N.E.2d 332 (Ohio 2010) and its progeny, an Ohio court is able to resentence a petitioner in Ohio to impose mandatory post-release controls. *Mackey*, 525 F. App'x at 362-63.

In the instant case, regardless of his trial attorney's misstatements during his 2007 sentencing hearing, Petitioner's plea agreement unequivocally stated he "WILL" be subject to post-release control. (Doc. 8-1, Ex. 6). Thus, the 2010 *nunc pro tunc* entry reflecting the inclusion of five-years of mandatory post-release control had no effect on Petitioner's negotiated

11

plea, as Petitioner had signed and agreed to both post-release control and parole after ten years in his binding plea agreement. (Doc. 8-1, Ex. 6). As such, the 2010 *nunc pro tunc* entry modifying Petitioner's sentence to include post-release control terms did not "substantially alter the original judgment entry" because it was clearly part of the parties' plea bargain. *Eberle*, 2012 WL 4483066, at *14.

In addition, Ohio law provides that the state trial court was permitted to modify Petitioner's sentence as it relates to mandatory post-release control pursuant to Ohio Rev. Code 2929.191, which is applicable to all sentences such as Petitioner's imposed on or after July 11, 2006. *State v. Evans*, 2010 WL 2245587 (Ohio 2010); *State v. Patel*, 2010 WL 3676875 (Ohio 2010); *State v. Jones*, 2010 WL 3239315 (Ohio 2010).[2] Thus, per the Ohio Supreme Court, Petitioner's initial February 26, 2007 sentencing entry was final, as *nunc pro tunc* entries merely correct the initial sentence and do not constitute new sentences or disrupt the finality of initial sentences under Ohio law; and in turn, do not restart the federal habeas clock. *Id.*; *see*, *e.g.*, *Mackey*, 525 F. App'x 357.

Petitioner's alternative arguments – that he is entitled to a new AEDPA start date pursuant to 28 U.S.C. §§ 2244(d)(1)(B) or (D) – are equally unpersuasive. Title 28 U.S.C. §2244(d)(1)(B) provides for an alternative AEDPA start date when an applicant was prevented from filing an application by state action in violation of the Constitution or the laws of the United States. Title 28 U.S.C. §2244(d)(1)(D) provides for an alternative later AEDPA start date

---

2. The Ohio Supreme Court in *Carnail* held that a defendant's sentence was void because the trial court failed to impose mandatory post-release control terms. To that end, the court noted void meant "the judgment [was] a mere nullity" and it was as if there had been no judgment at all pursuant to *State v. Bezak*, 868 N.E.2d 961, ¶12 (Ohio 2007). *Carnail*, *supra*, at 116-17. However, *Bezak* was overruled by *Fisher*, 942 N.E.2d 332. As such, the Ohio Supreme Court has declared that resentencing to include post-release control provisions merely modifies, rather than replaces, original sentences for purposes of sentence finality. *Evans*, 2010 WL 2245587; *Patel*, 2010 WL 3676875 (Ohio 2010); *Jones*, 2010 WL 3239315.

based on the date the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Pursuant to § 2244(d)(1)(D), Petitioner argues his AEDPA start date for Grounds Two through Four should begin on August 1, 2010, which is the date he claims access to his prison library and the Ohio Supreme Court's decision in *State ex. rel. Carnail v. McCormick*, 931 N.E.2d 110 (Ohio 2010). *Carnail*, *supra* (sentence was void when trial court failed to sentence defendant to mandatory post-release control); *but see*, *Patel*, *supra* (any error in the trial court's post-release control notification would only result in a voidable sentence and would not affect the finality of the sentence). Petitioner argues "confusion" expressed during his initial plea and sentencing hearing regarding whether he was subject to post-release control was not clear to him until he had access to the *Carnail* case, on or about August 1, 2010. Clearly, this is not so.

First, as noted above, Petitioner unequivocally agreed he was subject to post-release control in his plea agreement. Indeed, both Petitioner and his attorney signed the plea agreement that set forth the term of post-release control. This shows Petitioner was aware he was subject to post-release control per the binding agreement he signed as part of his plea deal.

Second, during his November 2010 sentence modification hearing, Petitioner's counsel moved the state trial court to withdraw Petitioner's guilty plea based on *State v. Clark*, 893 N.E.2d 462 (Ohio 2008), a case Petitioner's counsel alleged was "almost identical" to Petitioner's case. Based on *Clark*, Petitioner's counsel argued, "[Petitioner] would not have taken the plea, but for the miscommunication that the trial judge gave, and [if] he can prove that, he has been prejudiced and he's allowed to withdraw his plea." (Doc. 15-1, at 9-10). Thus, Petitioner was aware of the factual predicate of his claim – i.e., that an Ohio Supreme Court case may have allowed him to withdraw his plea based on post-release control miscommunication – at

least as far back as the July 2008 decision in the *Clark* case. Indeed, Petitioner concedes in his Reply that the *Carnail* decision is merely a "reminder" as opposed to new law for trial courts to "lawfully sentence defendants pursuant to [Ohio Rev. Code] § 2967.28." (Doc. 15, at 5).

Accordingly, there was no state created impediment to the timely pursuit of his instant claims under § 2244(d)(1)(B) because Petitioner could have pursued his involuntary plea and ineffective assistance claims during his accepted delayed appeal. Indeed, Petitioner filed his delayed appeal brief on July 21, 2008 (Doc. 8-1, Ex. 18), and the court of appeals decision was issued on November 5, 2008, after the *Clark* case was decided.

Moreover, as Respondent points out, despite Petitioner's claim that he did not discover an impediment until August 1, 2010 – the date he alleges access to the *Carnail* decision – Petitioner still waited nearly two years, until July 23, 2012, to pursue his delayed App. R. 26(B) ineffective assistance of counsel claim for failing to raise this on direct review. (Doc. 8-1, Ex. 41). As such, Petitioner's assertion that he was directly impeded from discovering the factual predicate of his claims by the ineffective assistance of both trial and appellate counsel is without merit.

Petitioner's AEDPA expiration date was December 20, 2009. Because he knew of the factual predicate of his claim based on the *Clark* decision in July 2008, evidenced by his 2010 sentence modification hearing, he is not entitled to a new AEDPA start date pursuant to §2244(d)(1)(B) or (D). Accordingly, his Petition is time-barred from federal habeas review and should be dismissed unless he can show his limitation period is subject to equitable tolling. *Holland v. Florida*, 130 S. Ct. 2549 (2010).

*Equitable Tolling*

Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances

beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). Ineffective assistance of counsel may constitute extraordinary circumstances sufficient to warrant relief. *Robinson*, 424 F. App'x at 442. However, such circumstance only warrants tolling if it was beyond the control of the litigant and unavoidable with reasonable diligence. *Id*.

Thus, to demonstrate he is entitled to equitable tolling, a habeas petitioner must establish: 1) he has diligently pursued his rights; and 2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S. Ct. at 2562; *see also Robison*, 424 F. App'x at 442 (explaining that prior to *Holland*, the Sixth Circuit used the five factors elicited in *Dunlap v. U.S.*, 250 F.3d 1001 (6th Cir. 2001) to determine equitable tolling under AEDPA). Such equitable tolling, however, is rare, granted sparingly, and evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

Here, Petitioner claims ineffective assistance of trial and/or appellate counsel as an "extraordinary circumstance [standing] in his way from properly filing his now procedurally defaulted post sentence motion to withdraw his guilty plea" and that he has "been more than reasonably diligent by recognizing the manifest injustice on August 1, 2010 . . . and exhausting that claim through the state courts until April 14, 2010." (Doc. 15, at 6).

Again, Petitioner argues confusion related to post-release control terms should allow him to withdraw his guilty plea, where he admitted to one count of rape of a minor, because whether he was subject to post-release control was not clear to him until he had access to the *Carnail* case on August 1, 2010. (Doc. 15, at 6). The Court discussed why this argument is not persuasive in

the context of Petitioner's claims of a later start date pursuant to §§ 2244(d)(1)(B) and (D). For those same reasons, Petitioner's argument is also not persuasive here. The Court further notes Petitioner claims access to the *Carnail* case on August 1, 2010; yet he waited nearly two years to file a claim based on ineffective assistance of counsel trial and/or appellate counsel. (See Doc. 8-1, Ex. 41). Accordingly, Petitioner has failed to demonstrate any "extraordinary circumstance" beyond his control prevented the diligent pursuit of his habeas claims. *Holland*, *supra*.

Likewise, Petitioner is not entitled to tolling for a showing of actual innocence under the "miscarriage of justice" standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggen v. Perkins*, 133 S. Ct. 1924 (2013). Simply stated, Petitioner cannot show that "no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. In 2007, Petitioner pleaded guilty one count of rape of a minor. (Doc. 8-1, Ex. 6). Here, he argues claims which solely relate to the terms governing his release from prison, not his underlying conviction. Accordingly, he is not entitled to equitable tolling based on actual innocence.

### MOTION FOR EXPANSION OF THE RECORD AND/OR EVIDENTIARY HEARING

Petitioner requests, and Respondent does not oppose, that the Court expand the record to include transcripts from Petitioner's November 16, 2010 post-release control sentence modification hearing. (Doc.15-1; *see* Docs. 14, 16). Petitioner's motion is granted with respect to inclusion of said transcript and the Court considered it as part of its report and recommendation.

Petitioner also requests an evidentiary hearing. (Doc. 14). AEDPA limits a federal court's ability to grant an evidentiary hearing:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Williams v. Taylor*, the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from that of § 2254(e)(2)(A)(ii). 529 U.S. 420, 434-35 (2000). The "failed to develop" clause in § 2254(e)(2) means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

*Id.* at 435. "Diligence" for purposes of § 2254(e)(2) "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. If the petitioner fails the diligence requirement of § 2254(e)(2), he is channeled into the strict requirements of subparts (A) and (B). Under those circumstances, a federal court may grant an evidentiary hearing only if the claim relies on "a new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence"; and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B).

17

Having reviewed the Petition and Reply, and as discussed above, the Court finds Petitioner has pointed to no "new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A) & (B). Accordingly, Petitioner's motion for an evidentiary hearing should be denied.

### CONCLUSION AND RECOMMENDATION

Following review, the undersigned GRANTS Petitioner's Motion to Expand the Record and/or for Evidentiary Hearing (Doc. 14) in part, to the extent it seeks inclusion of his November 16, 2010 sentencing hearing transcript, and DENIES the same in all other respects; and, further, RECOMMENDS the Court GRANT Respondent's Motion to Dismiss (Doc. 8) as the Petition is time-barred.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

18