IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**THOMAS CHARLES CRANGLE,**              Case Number 5:13 CV 842

  Petitioner,                                    Judge Jack Zouhary

  v.                                                  REPORT AND RECOMMENDATION

**TERRY TIBBALS, Warden,**

  Respondent.                                  Magistrate Judge James R. Knepp II

## INTRODUCTION

*Pro se* Petitioner Thomas Charles Crangle, a prisoner in state custody, filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent filed a Motion to Dismiss the Petition as time-barred. (Doc. 8). Petitioner filed a Motion for Expansion of the Record and/or Evidentiary Hearing (Doc. 14) and a Reply (Doc. 15), which Respondent opposed (Doc. 16). Following remand from the Sixth Circuit, *Crangle v. Kelly*, 838 F.3d 673, 680 (2016), Petitioner amended his Petition (Doc. 41), Respondent filed a Return of Writ / Answer (Doc. 43), Petitioner filed an "Opposition to Return of Writ" (Doc. 46), and Respondent filed a Sur-Reply (Doc. 47)[1]. For the reasons discussed below, the undersigned recommends the Amended Petition (Docs. 1, 41) be denied.

## FACTUAL BACKGROUND

Factual findings of state courts of appeals are presumed correct unless a petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d

---

1. Parties and courts in habeas corpus cases commonly use the terms Return of Writ and Traverse, while the Rules Governing Section 2254 Cases currently refer to these briefings as an Answer, and Reply. *See* Rule 5, Rules Governing Section 2254 Cases.

760, 775 (6th Cir. 2013). This presumption of correctness applies to factual findings of the court

of appeals based on the state trial court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

> {¶ 2} On December 14, 2006, Crangle was indicted on one count of rape, a first
> degree felony in violation of R.C. 2907.02(A)(1)(b), one count of kidnapping, a
> first degree felony in violation of R.C. 2905.01(A)(3), and gross sexual imposition,
> a third degree felony in violation of R.C. 2907.05(A)((4). On December 18, 2006,
> Crangle pled not guilty to these charges.

> {¶ 3} A supplemental indictment was filed on February 1, 2007, adding a
> specification to the previously indicted rape charge, charging Crangle as a sexually
> violent predator as defined in R.C. 2971.01(H), in violation of R.C. 2941.148
> [2971.02]. On February 5, 2007, Crangle pled not guilty to the specification. A jury
> trial was set for February 21, 2007.

> {¶ 4} On February 21, 2007, just prior to the trial, the trial court conducted a hearing
> on the competency of the rape victims to testify and on the State's motion to present
> "other acts" testimony. The trial court determined that both witnesses, under the
> age of ten, were competent to testify. Further, the trial court determined that the
> State's "other acts" evidence was admissible. The parties then resumed plea
> negotiations.

> {¶ 5} Prior to trial, Crangle informed the trial court that he wished to change his
> plea from not guilty to guilty. The parties indicated that Crangle's change of plea
> was a result of a plea negotiation wherein he would enter a plea of guilty to the rape
> charge and stipulate that he was a sexual predator. The State agreed to dismiss the
> charges of kidnapping and gross sexual imposition, and to dismiss the sexually
> violent predator specification. The trial court then sentenced Crangle to life
> imprisonment with parole eligibility after ten years. Crangle has appealed from his
> conviction, asserting one assignment of error for our review.

(Ex. 20, Doc. 8-1, at 1-2); *State v. Crangle*, 2008 WL 4791463 (Ohio Ct. App.) ("*Crangle I*").

## PROCEDURAL BACKGROUND[2]

State Trial Court

In November 2006, Petitioner was indicted by a grand jury for rape of a minor less than

thirteen years of age, kidnapping, and gross sexual imposition. (Ex. 1, Doc. 8-1, at 5-6). The

indictment was later supplemented to include specification of sexually violent predator. (Ex. 4,

---

2. Much of the early procedural history of this case is taken the undersigned's previous Report and
Recommendation in this matter (Doc. 17), as the underlying state court history remains unchanged.

Doc. 8-1, at 25). On February 21, 2007, following plea negotiations, Petitioner withdrew his plea of not guilty and pleaded guilty in exchange for reduced charges – one count of rape with a recommended sentence of life with parole eligibility after ten years. (Ex. 6, Doc. 8-1, at 27-29). Pursuant to the plea agreement, Petitioner acknowledged he was subject to post-release control after release from prison, "which could last up to 5 years." *Id.* at 27. That same day, the trial court held a plea and sentencing hearing. (Doc. 30-1). During the hearing, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Do you understand that range of sentences that I described? These sentences are not really a range. The only range comes from the possibility of the Parole Board acting to release you. And I should add, if that should occur, there would be a period of Post-Release Control of five years. |
| [DEFENSE COUNSEL]: | I think he would actually not - - it's not Post-Release Control. He would actually be on parole. It would be straight parole. It won't be Post-Release Control. |
| THE COURT: | Isn't that the same thing? I think that - - |
| [DEFENSE COUNSEL]: | Because the tail that he has is the rest of his life. So this Post-Release Control, he could get the maximum, half the maximum. I don't think that applies. It's straight parole. So if he violates the terms of his parole, if he is given parole, then he goes back to serve the tail, which is life. |
| THE COURT: | All Right. To life. I believe on review that would be the correct interpretation then of the parole supervision. Do you understand that, Mr. Crangle? |
| THE DEFENDANT: | Yes. |

(Doc. 30-1, at 7-8). On February 26, 2007, the trial court sentenced Petitioner to the negotiated sentence of life with the possibility of parole after ten years, and declared him to be a sexual predator. (Ex. 7, Doc. 8-1, at 30-31). The sentencing entry did not include the post-release control

terms discussed in his plea agreement. *Id.* Petitioner did not perfect a timely direct appeal to the court of appeals.

Delayed Direct Appeal

On April 19, 2007, Petitioner filed a *pro se* motion for delayed appeal and notice of appeal to the Ninth District Court of Appeals, Summit County. (Exs. 8-9, Doc. 8-1, at 32-36). On July 16, 2007, the appellate court noted the trial court failed to memorialize a "finding of guilt" pursuant to Ohio Crim. R. 32(C), and ordered Petitioner to obtain and file a final appealable order by August 23, 2007. (Ex. 10, Doc. 8-1, at 37-39). When Petitioner failed to comply, the appellate court dismissed his appeal for lack of a final appealable order on August 27, 2007. (Ex. 11, Doc. 8-1, at 40). Petitioner filed a motion for reconsideration, which the appellate court denied. (Exs. 12-13, Doc. 8-1, at 41-44).

Petitioner returned to the trial court and filed a motion to correct the record pursuant to Ohio Crim. R. 32(C). (Ex. 14, Doc. 8-1, at 45-46). On November 26, 2007, the trial court entered a new judgment to include a "finding of guilt", thus correcting its previous entry. (Ex. 15, Doc. 8-1, at 47-48). Again, Petitioner failed to perfect a timely direct appeal of this new judgment.

Instead, on January 2, 2008, Petitioner filed an untimely *pro se* notice of appeal followed by a February 7, 2008 motion for leave to file delayed appeal. (Exs. 16-17, Doc. 8-1, at 49-58). After the appellate court granted leave to appeal, Petitioner, through counsel, raised the following assignment of error:

> 1. Defendant-Appellant was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. Appellant was deprived effective assistance of counsel by virtue of the fact that his trial counsel had him plead guilty rather than no contest, thereby effectively precluding his ability to challenge the trial court's pretrial evidentiary rulings on the competency of child witnesses and the admission of other acts testimony.

(Ex. 18, Doc. 8-1, at 59-79). On November 5, 2008, the appellate court overruled Petitioner's assignment of error and affirmed the decision of the trial court. (Ex. 20, Doc. 8-1, at 104-08); *Crangle I*, 2008 WL 4791463. Petitioner failed to perfect a timely appeal to the Ohio Supreme Court.

Over four years later, on March 28, 2013, Petitioner filed a *pro se* notice of appeal and motion to file a delayed appeal with the Ohio Supreme Court. (Exs. 21-22, Doc. 8-1, at 109-21). On May 22, 2013, the Ohio Supreme Court denied Petitioner's motion and dismissed his appeal. (Ex. 23, Doc. 8-1, at 122).

Motion to Withdraw Guilty Plea

On August 5, 2010, Petitioner filed a *pro se* motion to withdraw his guilty plea arguing his plea was not "knowingly, intelligently, and voluntarily made" because "during the change of plea colloquy, the attorneys and court debated post-release control versus parole." (Ex. 24, Doc. 8-1, at 123-25). Petitioner simultaneously filed a motion to impose a lawful sentence, arguing the trial court failed to impose a mandatory term of post-release control in his sentencing order. (Ex. 25, Doc. 8-1, at 126-28); *see also* Ex. 27, Doc. 8-1, at 133-38 (supplemental motion). The state opposed Petitioner's motion to withdraw his plea and agreed that Petitioner's sentencing entry should be corrected *nunc pro tunc* pursuant to *State v. Singleton*, 124 Ohio St.3d 173 (Ohio 2009). (Ex. 26, Doc. 8-1, at 129-32).

On November 19, 2010, the trial court denied Petitioner's motion to withdraw his guilty plea and corrected its sentencing order *nunc pro tunc* to reflect the mandatory five-year term of post-release control. (Ex. 28, Doc. 8-1, at 139-41).

Petitioner, though counsel, timely appealed the trial court's judgment entry to the Ninth District Court of Appeals and asserted the following assignment of error:

5

> 1. The trial court erred by denying [Petitioner's] motion to withdraw his guilty pleas. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, R.C. 2907.02, R.C. 2967.28, Crim.R. 11, T.p. 7-9 (Feb. 21, 2007 Plea Hearing); T.p. 10-11 (Hearing, Nov. 16, 2010); Entry adding postrelease [sic] control and denying motion to withdraw plea, Nov. 19, 2010.

(Ex. 30, Doc. 8-1, at 146-64). On November 9, 2011, the appellate court affirmed the trial court's dismissal of Petitioner's untimely motion to withdraw his guilty plea. (Ex. 34, Doc. 8-1, at 197-206); *State v. Crangle*, 2011 WL 5377953 (Ohio Ct. App.) ("*Crangle II*"). The appellate court held the trial court lacked jurisdiction to consider a motion to withdraw guilty plea after the appellate court had upheld Petitioner's conviction and sentence. *See id.*

Petitioner filed a motion for reconsideration or in the alternative to certify a conflict (Ex. 35, Doc. 8-1, at 207-33), which was denied by the appellate court on December 19, 2011. (Ex. 36, Doc. 8-1, at 234-39). On February 2, 2012, Petitioner, through counsel, filed a timely notice of appeal with the Ohio Supreme Court, raising the following assignment of error:

> Under Special Prosecutors, as explained in State v. Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, an appellate affirmance does not automatically deprive a trial court of jurisdiction to vacate a guilty plea properly filed under Crim. R. 32.1.

(Ex. 37, Doc. 8-1, at 240-42). On April 4, 2012, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Ex. 40, Doc. 8-1, at 280).

Delayed App. 26(B) Application for Reopening

On July 3, 2012, Petitioner filed a *pro se* delayed application for reopening of his direct appeal pursuant to App. R. 26(B) raising the claim of ineffective assistance of counsel for failing to raise the proposed grounds in his direct appeal:

> 1. The trial court erred to the prejudice of appellant by accepting his guilty plea, as appellant's plea was not knowingly, intelligently, and voluntarily entered and was therefore obtained in violation of appellant's due process rights under the [F]ourteenth Amendment to the United States Constitution and Article One, Section Sixteen of the Constitution of the State of Ohio.

6

> 2. The appellant was deprived the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article One, Section Sixteen of the Ohio Constitution.

(Ex. 41, Doc. 8-1, at 281-318). On August 28, 2012, the appellate court denied Petitioner's 26(B) application to reopen as untimely. (Ex. 42, Doc. 8-1, at 319).

Acting *pro se*, Petitioner appealed this decision to the Ohio Supreme Court on October 12, 2012, and raised the following propositions of law:

> I. The appellant was denied the effective assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution.
>
> II. The Appellant was deprived of the effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I Section 10 of the Ohio Constitution.
>
> III. The trial court erred to the prejudice of the appellant by accepting his guilty pleas as appellant[']s plea was not knowingly, voluntarily, or intelligently entered and was therefore obtained in violation of appellant[']s Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I Section 16 of the Ohio Constitution.

(Exs. 43-44, Doc. 8-1, at 320-43). On January 23, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 46, Doc. 8-1, at 345).

### FEDERAL HABEAS CORPUS

On April 15, 2013, Petitioner filed the instant Petition raising the following grounds for relief:

> **GROUND ONE**:      Ineffective Assistance of Trial Counsel
>
> **Supporting Facts**: Trial counsel failed to provide effective assistance as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution by advising petitioner to enter a plea of guilty instead of no-contest, effectively waiving petitioners [sic] right to challenge any adverse pre-trial evidentiary rulings.
>
> **GROUND TWO**:      Ineffective Assistance of Trial Counsel

**Supporting Facts**: Trial counsel failed to provide effective assistance as guaranteed by the Sixth and Fourteenth Amendment when trial counsel's misinformation to the petitioner, and misrepresentations to the trial court at the plea and sentencing hearing, precluded petitioner from entering his guilty plea knowingly and intelligently with sufficient awareness of the consequences.

**GROUND THREE**:  The trial court accepted petitioner['s] guilty plea in violation of petitioner['s] due process rights under the Fifth and Fourteenth Amendments.

**Supporting Facts**: The trial court erred when it conveyed inaccurate postrelease [sic] control information depriving petitioner the ability to enter his guilty pleas with sufficient awareness of the relevant circumstances and automatic consequences.

**GROUND FOUR**: Ineffective Assistance of Appellate Counsel

**Supporting Facts**: Petitioner received constitutionally deficient representation when appellate counsel failed to assign as error significant and reversible plea defects regarding post-release control at the petitioners [sic] change of plea and sentencing hearing.

(Doc. 1). Petitioner subsequently requested leave to file an amended Petition. (Doc. 7). The undersigned denied the motion to amend. (Doc. 13). Respondent moved to dismiss the Petition as time-barred (Doc. 8) and Petitioner responded (Doc. 15). On March 31, 2014, the Court granted Respondent's motion to dismiss. (Doc. 21).

The Sixth Circuit reversed, holding the Petition was timely. *Crangle v. Kelly*, 838 F.3d 673, 680 (2016); (Doc. 35). In light of the remand, the undersigned granted Petitioner leave to amend his Petition. (Doc. 36). On March 6, 2017, Petitioner filed a motion to amend his Petition, stating he wished to delete grounds one, two, and four, and "proceed and prosecute only ground for relief #3 of his habeas corpus petition." (Doc. 41). Respondent subsequently filed an Answer (Doc. 43), and Petitioner filed a Reply (Doc. 46).[3]

---

3. Subsequently, while the amended Petition was pending, Petitioner filed a request for certification (Doc. 49), which Respondent opposed (Doc. 50), and a motion to stay and for leave to amend (Doc. 51), which Respondent also opposed (Doc. 52). In a concurrently filed Order, the undersigned denies both motions.

For the reasons discussed below the undersigned recommends the Court deny the amended Petition.

**DISCUSSION**

In Ground Three—the only remaining ground—Petitioner alleges the trial court violated his due process rights under the Fifth and Fourteenth Amendments when it failed to inform him of the mandatory five-year post-release control sentence. *See* Doc. 1, at 8. Respondent contends this ground is defaulted for multiple reasons, and Petitioner has not shown cause or prejudice to excuse the default. (Doc. 43, at 13-22). Moreover, Respondent contends the ground lacks merit. (Doc. 43, at 22-25).

Exhaustion & Procedural Default

In order to seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254, which states: "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734-35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This is to "[alert] [the state court] to the fact that the prisoner[] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (internal quotation marks omitted) (citations omitted). In order to accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before habeas relief. *Whitings v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, "a habeas petitioner must present both the

9

factual and legal underpinnings of his claims to the state courts." *Id.* (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

To determine whether a petitioner has "fairly presented" a claim to the state courts, courts look to the petitioner's:

 (1)  reliance upon federal cases employing constitutional analysis;

 (2)  reliance upon state cases employing federal constitutional analysis;

 (3)  phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

 (4)  alleging facts well within the mainstream of constitutional law.

*King v. Berghuis*, 744 F.3d 961, 966 (6th Cir. 2014) (citing *McMeans*, 228 F.3d at 681). In addition, a claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). Furthermore, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A claim cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court. *Id*; *see also Williams v. Wolfenberger*, 513 F. App'x 466, 68 (6th Cir. 2013) ("To satisfy this requirement, the petitioner must argue his claim under the same legal theory that was presented to the state courts.").

Related to exhaustion is the concept of procedural default, which can occur in two ways. *See Anderson*, 460 F.3d at 806. First, a claim may be procedurally defaulted if a petitioner "fails to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Id.* (citing *O'Sullivan*, 526 U.S. at 848-47). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan*, 526 U.S. at 845, 848; *Hafley v. Sowders*, 902 F.3d 480, 483 (6th Cir. 1990); *Leroy v.*

10

*Marshall*, 757 F.3d 94, 97, 99-100 (6th Cir. 1985). Additionally, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).

Hence, if a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). One such bar is the doctrine of res judicata. Under Ohio law, res judicata bars petitioners from litigating claims that either could have or were fully litigated at trial or on direct appeal. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967)).

Second, a petitioner may procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Anderson*, 460 F.3d at 806. If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*; *see Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). The Sixth Circuit "has consistently held that Ohio's doctrine of res judicata is an 'adequate and independent' ground justifying default." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006); *accord Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012); *Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004).

In order to overcome procedural default, a petitioner must demonstrate both cause for the default and prejudice from the error. *Sutton v. Carpenter*, 745 F.3d 787, 790-91 (6th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991)). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present

affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren*, 440 F.3d at 764.

A federal habeas court is barred from reviewing a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation or that failure to consider the claim would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).

*Res Judicata*

Respondent asserts Petitioner defaulted his claim of an unknowing and involuntary plea in violation of Due Process by not raising it on direct appeal. Ohio law requires claims based on allegations that can be determined from the trial court record to be raised on direct appeal. *See, e.g.*, *State v. Milanovich*, 42 Ohio St. 2d 46 (1975); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (if all facts necessary to develop a claim were available on direct appeal, that claim must be presented on direct appeal, otherwise it will be barred by *res judicata*). And, Respondent asserts, the state court enforced this procedural default when the appellate court held it lacked jurisdiction to consider Petitioner's motion to withdraw his plea, when his conviction had previously been upheld on appeal and Petitioner had not raised this claim. *See Crangle II*, 2011 WL 5377953.

In response, Petitioner argues that, under Ohio law, a "motion to withdraw a guilty plea is not, in fact, a collateral proceeding, but rather constitutes a direct attack upon the plea". (Doc. 46, at 3) (citing *State v. Bush*, 96 Ohio St. 3d 235 (2002)). Thus, he contends, he fairly presented this claim by raising it in his motion to withdraw his plea. Additionally, Petitioner points to the recent case of *Norris v. Bunting*, 2017 WL 749200, at *11 (S.D. Ohio) wherein the court declined to dismiss a similar ground for relief on procedural default grounds. *See id.* ("The Court is not

persuaded that the Ohio courts regularly apply the doctrine of *res judicata* in this situation to preclude reaching the merits of a motion for leave to withdraw a guilty plea, especially one which was premised on the development of case law subsequent to the plea.").

The undersigned finds it unnecessary to resolve this disagreement, however, because even assuming *arguendo* that Petitioner is correct and the state court incorrectly applied *res judicata*, Petitioner's claim suffers from another procedural default. That is—as discussed in greater detail below—even if it were sufficient for Petitioner to have raised this claim for the first time in his motion to withdraw his guilty plea, Petitioner then defaulted the claim when he failed to "fairly present" it as a federal constitutional claim to all levels of the Ohio courts.

On appeal of the trial court's denial of his motion to withdraw guilty plea, Petitioner (through counsel) asserted a single assignment of error:

> 1. The trial court erred by denying [Petitioner's] motion to withdraw his guilty pleas. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, R.C. 2907.02, R.C. 2967.28, Crim.R. 11, T.p. 7-9 (Feb. 21, 2007 Plea Hearing); T.p. 10-11 (Hearing, Nov. 16, 2010); Entry adding postrelease [sic] control and denying motion to withdraw plea, Nov. 19, 2010.

(Ex. 30, Doc. 8-1, at 147). Petitioner's brief primarily argued the trial court incorrectly applied state law in denying his motion to withdraw his guilty plea. *See id.* at 152-54. Specifically, Petitioner argued under *State v. Sarkozy*, 117 Ohio St. 3d 86 (2008), failure to advise a defendant of mandatory post-release control is a violation of Ohio Criminal Rule 11, and requires a court to vacate the plea. In his conclusion, Petitioner stated that his guilty plea "must be set aside because it was not knowing, intelligent, or voluntary under *Sarkozy*, *Clark*, or *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S. Ct. 1709 (plea must be knowing, intelligent and voluntary)." *Id.* at 154. The Sixth Circuit has found "naked assertion[s]" of violations of "due process" and "fair trial" insufficient to constitute fair presentment where a petitioner "failed to develop any cogent

13

arguments regarding those rights beyond the naked assertion that they were violated." *Blackmon v. Booker*, 394 F.3d 399, 400-01 (6th Cir. 2004); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) ("[G]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.").

Even assuming Petitioner's reference to the "Fifth, Sixth, and Fourteenth Amendments", (Ex. 30, Doc. 8-1, at 147), and to the Supreme Court's decision in *Boykin*, were sufficient to fairly present this claim to the Ohio court of appeals, Petitioner did not fairly present this claim to the Ohio Supreme Court. *See* Ex. 38, Doc. 8-1, at 243-56. In his memorandum in support of jurisdiction to the Ohio Supreme Court, Petitioner argued *solely* that the appellate court incorrectly applied Ohio law. *See id.* (asserting a single proposition of law: "Under *Special Prosecutors*, as explained in *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, an appellate affirmance does not automatically deprive a trial court of jurisdiction to vacate a guilty plea properly filed under Crim.R. 32.1"). Nowhere in Petitioner's brief to the Ohio Supreme Court did he raise the federal constitutional claim he now seeks to present here. *See Hafley v. Sowders,* 902 F.2d 480, 482 (6th Cir.1990) (noting that the fair presentation requirement allows the states an opportunity to self-correct, thus "expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state system").

Because Petitioner failed to present this claim to the Ohio Supreme Court, the claim is procedurally defaulted. *See* Boerckel, 526 U.S. at 845. As such, it can only be considered if Petitioner can demonstrate cause for, and prejudice resulting from, the default, or a fundamental miscarriage of justice.

14

*Cause & Prejudice*

As cause for this default in his Petition, Petitioner asserts ineffective assistance of appellate counsel. *See* Doc. 1, at 8. Ineffective assistance of appellate counsel may serve as cause to excuse a federal habeas Petitioner's procedural default. *See Franklin v. Anderson*, 434 F. 3d 412, 418 (6th Cir. 2006). However, such an ineffective assistance claim can only serve as cause if it is also not defaulted. *See Goldberg v. Money*, 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards v. Carpenter*, 529 U.S. 446, 435 (2000)); *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008) ("An ineffective assistance of appellate counsel claim can serve as cause to excuse a procedural default only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted."). Here, Petitioner raised this ineffectiveness claim in his Delayed Application for Reopening under Ohio Appellate Rule 26(B). *See* Ex. 41, Doc. 8-1, at 281-85. The state appellate court, however, denied Petitioner's application as untimely, and held he had not demonstrated good cause for the delay (Ex. 42, Doc. Doc., at 8-1, at 319), and the Ohio Supreme Court declined jurisdiction (Ex. 46, Doc. 8-1, at 345). The Sixth Circuit has held that the Ohio courts' enforcement of the time limitation regarding Appellate Rule 26(B) is an adequate and independent procedural ground under *Maupin* on which to foreclose federal habeas review. *See, e.g.*, *Parker v. Bagley*, 543 F.3d 859, 861-62 (6th Cir. 2008); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002). Because Petitioner's ineffective assistance of counsel claim is defaulted, it cannot serve as cause to overcome Petitioner's default of his due process claim.

In his Reply brief, Petitioner asserts there is an "absence of available state corrective process" and the circumstances "render such process ineffective to protect [his] rights". (Doc. 46, at 5 (quoting 28 U.S.C. § 2254(b)(1)(B)).[4] He also asserts that "the factual basis for the claim did

---

4. Petitioner cites § 2254(c), but the quoted language is from § 2254(b)(1)(B).

not exist at the time of his initial direct appeal." (Doc. 46, at 6); *see also* Doc. 46, at 8 ("the instant issue is based upon facts that did not exist at the time of the initial direct appeal, and as such, could not have been presented at anytime [sic], or in any proceeding, before Petitioner's good faith attempts to present the issue in his motion to withdraw guilty plea, and attempts to appeal and remove the lack of corrective process therefrom subsequent thereto").

Petitioner's argument is, in essence, that this claim did not exist until the trial court resentenced him to add the post-release control in 2010—after his direct appeal had concluded. That is, he contends, Ohio law provides no mechanism to challenge a later-imposed sentence of post-release control, when that post-release control is imposed after the direct appeal has concluded. *See* Doc. 46, at 8 ("[T]he state of the law in Ohio . . . removes any conceivable corrective process for the issues presented in this action and, as such, a merit review is appropriate."). Respondent offers no specific response to this argument, but in his responses to Petitioner's motions, contends that even if Petitioner's claim is not defaulted, it fails on the merits. *See* Doc. 50, at 4. As discussed below, the undersigned agrees with Respondent that Petitioner's claim fails on the merits, and as such, the undersigned need not resolve Petitioner's argument about an absence of state corrective process.

### *Miscarriage of Justice / Actual Innocence*

Alternatively, procedural default can be overcome if a petitioner alleges "a manifest miscarriage of justice would otherwise result." *Sutton*, 745 F.3d at 790–91 (citing *Coleman*, 501 U.S. at 749–50). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To establish actual innocence, Petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To

16

be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner here makes some vague references to innocence in his pleadings. *See* Doc. 46, at 14-15 ("In addition, new evidence obtained from Petitioner's trial counsel that was unknown to Petitioner at the time of trial certainly now demonstrates Petitioner's truthful declaration that he would not have pled guilty to a life sentence with parole and PRC and instead insisted on exercising his right to trial with its likely acquittal to the alternative choice of life without parole.") (citing Doc. 15, at 16) ("The discovery of the factual predicate of his claim also resulted in the discovery of evidence that was withheld from petitioner which this evidence will establish his legal innocence when he eventually receives his new trial."). First, legal insufficiency is not sufficient under the applicable standard. *See Bousley*, 523 U.S. at 623. Second, to the extent Petitioner alleges factual innocence, he has not supported such an allegation with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324. As such, Petitioner may not assert actual innocence to overcome the procedural default of this ground.

Merits

Even if the Court were to find Petitioner's claim not procedurally defaulted, or that Petitioner had shown cause and prejudice, or an absence of state corrective process, the undersigned recommends Petitioner's claim could also be denied on the merits. The gist of Petitioner's claim is that his guilty plea was not knowing and voluntary because of the court's failure to advise him at his plea hearing that, if released, he could be subjected to a term of post-

17

release control. Petitioner contends that, had he known this fact, he would not have pleaded guilty. Petitioner's indictment charged him with rape of a minor under thirteen years of age (with a sexually violent predator specification), kidnapping, and gross sexual imposition. (Exs. 1, 4, Doc. 8-1, at 5-6, 25). A conviction on a rape charge under the applicable section, Ohio Revised Code § 2907.02(A)(1)(b), mandates a convicted offender "shall be sentenced to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code." Ohio Rev. Code. § 2907.02(B). Pursuant to the terms of his plea agreement, Petitioner pled guilty to the rape charge, and the State agreed to dismiss the sexually violent predator specification, as well as the kidnapping and gross sexual imposition charges. (Ex. 6, Doc. 8-1, at 27-28); *Crangle I*, 2008 WL 4791463.

Clearly established federal law regarding the due process requirements of guilty pleas provides that to be valid, a guilty plea must be made knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Determining whether a plea was made voluntarily requires the Court evaluate all of the relevant circumstances surrounding the plea. *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir. 1984). The "ultimate question" is if the plea "was in fact voluntarily and intelligent." *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir. 1985).

Other courts have found an Ohio court's failure to correctly inform a defendant about post-release control does not render a plea unknowing or involuntary. In *Norris v. Bunting*, the petitioner had similarly not been informed of the post-release control during his original sentencing hearing. 2017 WL 749200, at *2-3 (S.D. Ohio). Also similarly to the instant case, the trial court later held a hearing (pursuant to state law) in which it notified the petitioner of the mandatory five year post-

18

release control requirement. *Id.* at *3. In his habeas corpus petition, the petitioner argued his due process rights were violated by the trial court's failure, and argued he would not have pleaded guilty had he known of the post-release control consequence. The magistrate judge recommended this claim be rejected on the merits:

> Petitioner did offer, at the re-sentencing hearing, to take the stand and swear that had he known about the mandatory imposition of post-release control, he would not have pleaded guilty. The trial judge was skeptical of that claim, and so is this Court. Saying something, even under oath, does not make it so, or even make it credible. There is only a minuscule likelihood that Petitioner would ever suffer consequences from being placed on post-release control. As the state trial judge noted, if he is ever paroled on the aggravated murder charge, it would not be for at least 33 years (according to the ODRC website, Petitioner's first parole hearing will not be held until August of 2036), and that date is unaffected by the sentence of post-release control. Further, if released, he would be on parole as well as post-release control, and the maximum term he could receive for a violation of parole would be life in prison, as opposed to five years for a violation of post-release control. It is true that the conditions of post-release control might be somewhat more restrictive, but it is difficult to accept that a rational defendant in Petitioner's position, who was facing the death penalty if he went to trial, would have taken that risk just to avoid those conditions some thirty or forty years into the future. Given the extreme unlikelihood of Petitioner's claim that he would have done just that, the Court is entitled to insist on something other than his bare statement to support that claim. The record contains no such evidence. Therefore, Ground Two fails on its merits.

*Norris*, 2017 WL 749200, at *15. In adopting the Report and Recommendation, the district court explained:

> Petitioner's claim that his guilty plea was not knowing, intelligent or voluntary does not provide him a basis for relief. Petitioner was sentenced to 33 years to life imprisonment. The trial judge explained to him that, if he were ever to be released, he would be on parole for the aggravated murder charge, and could be sent back to prison for life, not just the five years that could be imposed for a violation of the terms of post-release control. Under these circumstances, the failure of the state trial court correctly to inform Petitioner about post-release control does not render the plea unknowing or involuntary.

*Norris v. Bunting*, 2017 WL 1433342, at *2 (S.D. Ohio).

The Report and Recommendation in *Norris* also relied upon another case with somewhat factually similar circumstances, *Myers v. Warden, Warren Correctional Institution*, 2011 WL

7039933, *report and recommendation adopted by* 2012 WL 122568 (S.D. Ohio). In *Myers*, the

petitioner also claimed his plea was not knowing and voluntary because he was told, incorrectly,

that he would be subject to post-release control, when, in fact, he was not. *Id.* at*7-8. The petitioner

there argued that because the trial court advised him he would be subject to post-release control

sanctions, he did not fully understand that the maximum sentence he faced was life. *Id.*at *8. The

court rejected this claim:

> Even assuming that the misinformation provided to petitioner regarding his
> eligibility for post-release control in and of itself triggers constitutional concerns,
> petitioner is not entitled to relief absent a showing of a "reasonable probability that,
> but the error, he would not have entered the plea." *See United States v. Davis,* ——
> F.3d ——, No. 08–6173, 2011 WL 1754082, at *4 (6th Cir. May 10, 2011), *petition
> for cert. filed,* —— U.S.L.W. —— (U.S. July 25, 2011) (No. 11–5558); *cf. Hill,* 474
> U.S. at 56–58 (requiring a showing of "prejudice" from a defendant seeking to
> challenge the validity of his guilty plea on the ground that his trial attorney supplied
> him with erroneous information about parole eligibility). No such showing has been
> made in this case. As discussed above, it is clear from the record that petitioner was
> well aware of the sentence he would receive on entering his guilty plea. Moreover,
> there is no evidence in the record even remotely suggesting that petitioner was led
> to expect or in fact expected to be released on either parole or post-release control
> prior to the expiration of his 15–year to life sentence. To the contrary, the trial court
> made it clear to petitioner during the plea colloquy that release after fifteen years
> was only a possibility and that he could end up spending the rest of his life in prison.
> Therefore, it is highly unlikely that the misinformation regarding post-release
> control influenced or was even considered by petitioner in deciding whether or not
> to plead guilty.

*Myers*, 2011 WL 7039933, at *9.

Additionally, both the *Myers* and *Norris* courts analogized claims with misinformation

about post-release control to claims of ineffective assistance of counsel for failure to properly

advise a defendant prior to a plea agreement. *See Norris*, 2017 WL 749200, at *14-15; *Myers*,

2011 WL 7039933, at *9. The *Norris* court explained:

> The situation presented here is similar to a claim that, but for the failure of counsel
> to advise a defendant properly prior to the entry of a plea, that defendant would
> have rejected the plea agreement and gone to trial. In that context, the courts have
> said that

> The petitioner must ... show a reasonable probability that but for counsel's errors, he would not have pleaded guilty, because there would have been a reasonable chance that he would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.' " *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. at 372).

> *Hairston v. Barrett*, 2016 WL 1392015, *5 (E.D. Mich. Apr. 7, 2016).

2017 WL 749200, at *14–15; *see also Myers*, 2011 WL 7039933, at *9 (citing, by way of comparison, *Hill v. Lockhart,* 474 U.S. 52, 56-58 (1985), which requires a showing of "prejudice" from a defendant seeking to challenge the validity of his guilty plea on the ground that his trial attorney supplied him with erroneous information about parole eligibility).

Here, Petitioner submitted to the state court an affidavit asserting that had he known "that an additional mandatory period of supervision of 5 years was required as part of [his] sentence, [he] would not have pled guilty." (Ex. 27, Doc. 8-1, at 138). He continues to make this argument before this Court, contending: "Petitioner would not have pled guilty if he would have known that that substantial increase in his sentence would closely equal the total sentencing exposure he could receive if found guilty after a trial." (Doc. 46, at 15).

Petitioner was sentenced to life, with the possibility of parole after ten years. (Doc. 8-1, Ex. 7); *see also* Doc. 30-1, at 16. The trial court and Petitioner's counsel made clear parole after ten years was not a guarantee:

| [DEFENSE COUNSEL]: | He is aware that by entering into this plea of guilty that he will be sentenced to life in prison. He understands that he will be eligible for parole after |
|---|---|

|                | ten years. Although that is not a certainty. That would be up to the Parole Board. |
|----------------|-------|
| (Doc. 30-1, at 4). | |
| THE COURT: | All right. I must next inform you concerning the sentence on accepting your plea. The Court will proceed to sentence you and this is an offense that carries a life sentence. However, there is parole eligibility after serving 10 years. That is, of course a determination that I don't make. It's instead made by the Parole Board. |

* * *

|                | |
|----------------|-------|
| THE COURT: | Do you understand the range of sentences that I described? These sentences actually is not [sic] a range. The only range comes from the possibility of the Parole Board acting to release you. |

(Doc. 30-1, at 6-7).

Petitioner seems to assert that the addition of post-release control lengthened his sentence. *See* Doc. 46, at 14 ("But that situation changed three years later when the State trial court decided to increase Petitioner's sentence, substantially increasing his chances of never being released from prison."). As the Sixth Circuit explained in determining Petitioner's *nunc pro tunc* resentencing qualified as a new judgment resetting the AEDPA statute of limitations, there are certainly material differences between post-release control and parole:

> Post-release control materially increases the potential restrictions on Crangle's liberty for at least two reasons. First, upon the prisoner's release to post-release control, the parole board must impose at least one post-release control sanction "to apply during the prisoner's period of post-release control." Ohio Rev. Code § 2967.28(D)(1). These are drawn from Ohio Revised Code §§ 2929.16–.18,[2] which authorize a wide variety of sanctions, including community service, residential restrictions, curfews, and fines. Parole does not appear to have the same statutory requirement.[3] *See* Ohio Rev. Code § 5149.01–.12; *id.* § 2967.02. Additionally, while both parolees and releasees—the statutory term for persons on post-release control[4]—may be required to reside in a "halfway house" upon release, it appears that only releasees can be required to reside in a "community-based correctional facility" or a "jail." That is a material change in conditions. *See* Ohio Rev. Code § 2967.14 (providing that parole board may require both parolees and releases "to

22

reside in a halfway house or other suitable community residential center" upon release); *id.* § 2967.28(D) (authorizing parole board to impose residential sanctions on releasees upon release); *id.* § 2929.16(A) (defining residential sanctions to include a "[a] term of up to six months at a community-based correctional facility" and " a term of up to six months in a jail").

Second, releasees that re-offend after completing post-release control may be subject to a collateral consequence that parolees avoid. When a parolee completes parole, Ohio law directs the parole board to issue a certificate of final release. *See* Ohio Rev. Code § 2967.16(A). When a releasee completes post-release control, Ohio law not only directs the parole board to issue a certificate of final release, but also to "classify the termination of post-release control as favorable or unfavorable depending on the offender's conduct and compliance with the conditions of supervision." *Id.* § 2967.16(B)(1); *see also* Ohio Admin. Code § 5120:1–1–42(A). Ohio law provides that an unfavorable "[d]esignation shall be considered as a relevant factor in sentencing ... if the offender is convicted of a felony offense subsequent to the completion or termination of the period of post-release control." Ohio Admin. Code § 5120:1–1–42(A); *see also* Ohio Rev. Code § 2929.12(D)(1) (providing that "[t]he sentencing court shall consider" whether the offender was "unfavorably terminated from post-release control for a prior offense"). Thus, post-release control supervision exposes an inmate to the possibility of an unfavorable designation, which in turn exposes the inmate to the possibility of greater punishment if he or she reoffends. That, too, is a material difference in Crangle's conditions of confinement.

*Crangle*, 838 F.3d at 679–80.

Thus, post-release control *could* affect Petitioner's future, if and when he is released on parole. But Petitioner's maximum sentence was, and always has been, a life sentence.[5] If Petitioner were to be paroled, it could not be for at least 10 years after his original sentence. And any such date is not affected by the post-release control sentence. Further, if released, Petitioner would be on parole and post-release control simultaneously. As the *Norris* court explained:

It is true that the conditions of post-release control might be somewhat more restrictive, but it is difficult to accept that a rational defendant in Petitioner's position, who was facing the death penalty if he went to trial, would have taken that

_____

5. Petitioner's assertion that the "trial court did not explain the maximum sentence he was exposed to" (Doc. 46, at 10), is belied by the record, *see* Doc. 30-1, at 16 ("[T]he Court hereby imposes a life sentence, a sentence to prison for life. The Court notes that you will be parole eligible after serving 10 years."), and by Petitioner's own description of his sentence, *see* Doc. 46, at 9 ("The trial court sentenced Petitioner in 2007 to life imprisonment with the possibility for parole after ten years.").

> risk just to avoid those conditions some thirty or forty years into the future. Given
> the extreme unlikelihood of Petitioner's claim that he would have done just that,
> the Court is entitled to insist on something other than his bare statement to support
> that claim.

2017 WL 749200, at *15. While Petitioner here was facing a potential sentence of life without parole, and not the death penalty—certainly a distinction—the undersigned finds the rationale still holds. It is hard to imagine a person in Petitioner's position would have rejected a plea deal providing him the possibility of release on parole (where the crime as charged carried a life without parole sentence) merely because of the possibility he would be subject to somewhat more restrictive post-release control restrictions. That is, Petitioner has not shown that a rational individual in his circumstances would have rejected the plea bargain had he been properly informed of the post-release control sanction. And Petitioner seemingly admits as much in his Reply: "Petitioner's main concern was the sentence that could be imposed and it appeared reasonable for Petitioner to accept the life sentence deal when faced with the maximum of life without parole." (Doc. 46, at 14). Although Petitioner submitted an affidavit asserting he would not have pleaded guilty had he known about the post-release control sentence, as the *Norris* court explained: "Given the extreme unlikelihood of Petitioner's claim that he would have done just that, the Court is entitled to insist on something other than his bare statement to support that claim." 2017 WL 749200, at *15. As such, the undersigned recommends Petitioner's claim could alternatively be denied on the merits.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons state above, the undersigned recommends the Amended Petition be DENIED.

  s/James R. Knepp II        
United States Magistrate Judge

24

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).